1  NORMAN C. SULLIVAN, JR. (State Bar No. #48762)
2  GEORGE J. FOWLER, III (admitted *pro hac vice*)
   **FOWLER RODRIGUEZ VALDES-FAULI**
3  400 Poydras Street, 30th Floor
4  New Orleans, Louisiana 70130
   (504) 523-2600 Telephone
5  (504) 523-2705 Facsimile

6
7  WILLIAM ROBINSON (State Bar No. 087647)
   KELLY L. KRESS (State Bar No. 246368)
8  **NIXON PEABODY LLP**
   555 W. Fifth Street, 46th Floor
9  Telephone: (213) 629-6000
10 Facsimile: (213) 629-6001

11
   Attorneys for Plaintiffs, CRYSTAL
12 CRUISES, INC. and CRYSTAL SHIP
   THREE (BAHAMAS) LTD.
13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

17 | **Crystal Cruises, Inc. and Crystal Ship Three (Bahamas) Limited,** | No. 2:10-cv-08736 PSG (JCx) |

18

19                    Plaintiffs

      v.                          **OMNIBUS OPPOSITION TO**
20                                **DEFENDANTS' MOTIONS TO**
   **Moteurs Leroy-Somer S.A.; Leroy-** **DISMISS OF FOR LACK OF**
21 **Somer;**                     **PERSONAL JURISDICTION AND**
   **Emerson Electric Company; and** **MOTION FOR LEAVE TO**
22 **DOES 1**                     **CONDUCT JURISDICTIONAL**
   **through 20, Inclusive,**     **DISCOVERY**
23

24                    Defendants.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ***TABLE OF CONTENTS***

Table of Authorities ..................................................................................................ii

Introduction .............................................................................................................1

Background ..............................................................................................................2

Procedural History ..................................................................................................3

Request to Conduct Jurisdictional Discovery ........................................................4

    A.    Crystal believes information developed through discovery will show that general jurisdiction exists over the Leroy-Somer entities. .............................................................................4

    B.    The Court has broad discretion to order jurisdictional discovery. ....................................................................................6

    C.    Crystal has made more than a "colorable" showing of contacts to warrant jurisdictional discovery. ..........................7

        1.    Contacts and Corporate Relationship ...............................8

        2.    Reasonableness ...............................................................12

Conclusion .............................................................................................................14

i

1

### *TABLE OF AUTHORITIES*

2

**Cases**

3

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848 (9th Cir. 1993) ................ 12

4

*Boaz v. Boyle & Co.* (1995), 40 Cal.App.4[th] 700, 46 Cal. Rptr. 2d 888 ......................... 4

5

6

*Butcher's Union Local No. 498, United Foods & Commercial Workers v.*
    *SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) .................................................. 6

7

*Chan v. Society Expeditions, Inc.,* 39 F.3d 1398 (9th Cir. 1994) .................................... 5

8

9

*Chapman v. Krutonog*, 256 F.R.D. 645, 649 (D. Haw. 2009) ........................................ 7

10

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th
    Cir. 1977) ................................................................................................................ 6, 7

11

12

*eMag Solutions, LLC v. Toda Kogyo Corp.*, No. C 02-1611 PJH, 2006
    U.S. Dist. LEXIS 94462 (N.D. Cal. 2006) ............................................................. 7

13

14

*F. Hoffman LaRoche, Ltd. v. Superior Court,* (2005) 130 Cal. App. 4th
    782, 30 Cal. Rprt. 3d. 407 ..................................................................................... 5

15

16

*Flatt v. Leroy-Somer, N.A., C.A. No. 09-01229*
    *(USDC WD Tenn.)* ................................................................................................ 10

17

18

*Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements, Ltd.,* 328 F.3d
    1122, 1135 (9th Cir. 2003) ................................................................................... 6

19

20

*Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 80 104 S.Ct.
    1868, 80 L.Ed. 2d 404 (1984) ................................................................................ 4

21

*Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) ................................... 7

22

23

*Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D.
    Cal. 2001) .............................................................................................................. 7

24

25

*Paneno v. Centres for Academic Programs Abroad, Ltd.,* (2004) 118
    Cal.App. 4th 1447, 13 Cal. Rptr. 3d 759 .......................................................... 4, 5

26

27

*Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed. 2d. 683
    (1997) ..................................................................................................................... 8

28

ii

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

*Shute v. Carnival Cruise Lines,* 897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)...................................................................12

*Tauzon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1169 (9th Cir. 2006) ..................8

*Transure, Inc. v. Marsh and McLennan, Inc.,* 766 F.2d 1297 (9th Cir. 1985)........................................................................................................4

**Statutes**

Cal. Code Civ. Proc. § 410.10 ......................................................................10

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, come plaintiffs, Crystal Cruises, Inc. and Crystal Ship Three (Bahamas) Limited (hereinafter collectively referred to as "Crystal" or "Plaintiffs"), and respectfully submit the instant Memorandum in Opposition to the Motions to Dismiss for Lack of Personal Jurisdiction filed by defendants, Moteurs Leroy-Somer, S.A. ("MLS") and Leroy-Somer ("LS") (hereinafter collectively referred to as "Leroy-Somer") (Docket Event Nos. ("DE") 21 and 24):

### *Introduction*

The Motions to Dismiss are premature.  Leroy-Somer has not answered the allegations asserted against it, it has not explained its corporate relationship with Emerson Electric Company ("Emerson") and Emerson's numerous affiliates, and it has not answered recent discovery addressing its contacts with the State of California. Crystal requests that the Motions to Dismiss be denied, without prejudice, and that this court allow it to conduct jurisdictional discovery prior to the court's consideration of the Motions to Dismiss.  The requested discovery is warranted because, even at this preliminary stage of the lawsuit, Crystal can make a "colorable" showing that Leroy-Somer and Emerson are related corporate entities such that jurisdiction over Emerson is the same as jurisdiction over Leroy-Somer, and that Leroy-Somer has contacts with the State of California such that it should be subject to general jurisdiction in this forum.

1

1

*Background*

2       Crystal filed this lawsuit to recover costs incurred by it to perform substantial

3  repairs to six (6) defective generators installed on board a luxury ocean liner, the

4  CRYSTAL SERENITY.[1]  Each of these eleven thousand (11,000) volt LSA 62-80/12P

5  generators was designed, marketed, and manufactured by defendants, Emerson and

6  Leroy-Somer.  Emerson has not contested that jurisdiction over it is proper in this

7  court.

8       Crystal is a California corporation that operates luxury cruise vessels.  On

9  December 12, 2000, Nippon Yusen Kaisha, a/k/a "NYK LINE," the parent of Crystal

10 Cruises, Inc., entered into a contract with Chantiers De L'Atlantique ("CAT") for the

11 construction of a new cruise ship that would later become known as the CRYSTAL

12 SERENITY.  On February 28, 2001, CAT notified NYK Line and Crystal that it had

13 selected Leroy-Somer as the vendor to manufacture and install the six generators that

14 would be used on the CRYSTAL SERENITY in the vessel's main propulsion system.

15      NYK Line and Crystal questioned the experience and capability of Leroy-Somer

16 to design, manufacture and construct these generators.  Leroy-Somer and Emerson

17 represented at all times that Leroy-Somer had the requisite experience to complete the

18 work; these representations were false.  Emerson and Leroy-Somer marketed

19 themselves as a single corporate entity, thereby encouraging NYK Line and Crystal to

20 rely upon the technological and financial resources and worldwide reputation of

21 Emerson.  These representations included the furnishing of informational materials in

22 which Emerson and Leroy-Somer are represented as a single corporate entity.

23      While the CRYSTAL SERENITY was undergoing a scheduled dry-docking in

24 November of 2008, partial discharge activity in the generators was first discovered.  A

25 representative of Leroy-Somer was called out to perform an inspection of the

26 generators and to make recommendations for repairs.  These repairs commenced in

27

28 [1] All background facts have been pled in Crystal's First Supplemental and Amending Complaint. See DE 14.

2

1  January of 2009, but were halted soon thereafter due to concerns about the quality of

2  the repair work.

3       In March of 2009 generator no. 6 sustained an electrical failure as a result of

4  partial discharge degradation.  It was discovered that the other five generators were

5  experiencing similar problems and would ultimately fail.  The defects in the generators

6  were not apparent at the time of sale or prior to the dry-docking of the CRYSTAL

7  SERENITY in November of 2008.  It became necessary for Crystal to completely

8  rewind all six generators, thereby incurring substantial costs for which it now seeks

9  recovery.

10  ***Procedural History***

11       Crystal filed the instant lawsuit against Emerson and Leroy-Somer in November

12  of 2010.  Crystal asserts the following claims, amongst others, against Emerson and

13  Leroy-Somer:  (1) negligent manufacture; (2) breach of implied warranty of

14  merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4)

15  breach of express warranty; and (5) negligent misrepresentation and concealment.

16       Crystal further alleges that Emerson and Leroy-Somer are alter egos and/or

17  agents of one another.  For example, Emerson and Leroy-Somer "marketed themselves

18  as a single corporate entity, thereby encouraging NYK Line and Crystal to rely upon

19  the technological and financial resources and worldwide reputation of Emerson."[2]  In

20  addition, "Leroy-Somer, either directly or through their agents, and/or alter egos, made

21  representations of material fact regarding the design, quality, performance, reliability,

22  cost-efficiency and maintenance of its generators."[3]

23       Emerson filed an Answer consisting of a general denial on January 18, 2011.[4]

24  Service on MLS and LS was perfected pursuant to the Hague Convention on March

25  10, 2011, and April 4, 2011, respectively.[5]  On April 28, 2011, MLS and LS filed

26

27

28

---

[2]  See DE 14 at ¶11.
[3]  *Id.* at ¶59.
[4]  See DE 12.
[5]  See DE 18 and 19.

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Motions to Dismiss for Lack of Personal Jurisdiction.[6]  Emerson, MLS and LS are all represented by the same counsel.

On May 11, 2011, Crystal propounded written discovery to Emerson and Leroy-Somer which address the corporate relationship of the defendants and their contacts with California.[7]  Upon receipt of these responses it may also be necessary to depose corporate or other representatives of each entity to fully explore these areas of inquiry.

Against this backdrop Crystal opposes the Motions to Dismiss as premature, and respectfully requests that it be permitted to proceed with the above-described discovery.

### *Request to Conduct Jurisdictional Discovery*

**A.    *Crystal believes information developed through discovery will show that general jurisdiction exists over the Leroy-Somer entities.***

General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant when the defendant's activities in the forum are substantial, continuous and systematic, even if the cause of action is unrelated to the defendant's forum-related activities.[8]  Crystal recognizes that the standard that must be met to establish general jurisdiction is more stringent than the showing of minimum contacts necessary to obtain specific jurisdiction.[9]  It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of one company to the other company for jurisdiction purposes.[10]  However, California courts recognize two exceptions to this general rule; the contacts of a subsidiary may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the

---

[6]  See DE 21 and 24.
[7]  See written discovery attached hereto as Exhibit "A."
[8]  *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 80 104 S.Ct. 1868, 80 L.Ed. 2d 404 (1984); *Paneno v. Centres for Academic Programs Abroad, Ltd.* (2004) 118 Cal.App. 4th 1447.
[9]  *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700.
[10]  *Transure, Inc. v. Marsh and McLennan, Inc.,* 766 F.2d 1297 (9th Cir. 1985).

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

agent of the parent.[11]   Under the representative services doctrine, a type of agency relationship, jurisdiction over a parent is found to exist where the parent uses a subsidiary to do what it otherwise would have done itself in the operational sense.[12] Additionally, the representative services doctrine has been applied outside of the parent-subsidiary context where two companies are separately owned affiliates, but one company performs functions in furtherance of the other company's business.[13]

Crystal believes from its investigation to date, as detailed hereinafter, that general jurisdiction exists pursuant to agency principles, specifically the representative services doctrine.   Emerson has not contested that it is subject to jurisdiction in California.   In the present instance it appears that Emerson incorporates Leroy-Somer component parts and products into Emerson products.   These Emerson products are placed into the stream of commerce and sold throughout the United States.   Without Leroy-Somer, Emerson would have to manufacture these component parts itself. Without Emerson, Leroy-Somer would be forced to conduct further marketing and selling of its products in places such as California.   In other words, Emerson and Leroy-Somer are each doing work that the other company would have to perform itself if such a mutually beneficial relationship did not exist.   The information set out hereinafter suggests that Leroy-Somer products are being substantially, continuously and systematically sold and distributed within California both by Leroy-Somer and through Emerson.

Further, in addition to LS and MLS, an additional entity known as Leroy-Somer-North America exists.   Upon information and belief Leroy-Somer-North American is a division of Emerson and it sells, services, and markets Leroy-Somer's products throughout North America, including California.   Due to the complex nature of

---

[11] *Paneno, supra,* 118 Cal.App. 4th 1447, 1455-56; *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398 (9th Cir. 1994).
[12] *F. Hoffman LaRoche, Ltd. v. Superior Court* (2005) 130 Cal. App. 4th 782; *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398 (9th Cir. 1994).
[13] *Paneno, supra,* 118 Cal.App. 4th 1447.

5

Emerson's business structure discovery is necessary to determine the exact inter-relationship between all three Leroy-Somer entities, as well as their relationship with Emerson.  If it turns out that something other than a traditional parent-subsidiary relationship exists jurisdiction may exist regardless of whether the representative services doctrine applies.

With respect to the question of whether specific jurisdiction over Leroy-Somer exists jurisdictional discovery is also necessary to address this issue.

In summary, the record is simply not developed at this juncture to enable Crystal or the court to determine the extent of Leroy-Somer activities in California or whether the alter ego or certain agency theories are applicable such that general or special jurisdiction exists.  Leroy-Somer's Motions to Dismiss are also premature since Crystal should be given the opportunity to explore Emerson's corporate business structure.

## B.      The Court has broad discretion to order jurisdictional discovery.

A district court has broad discretion to permit discovery to aid in determining whether it has *in personam* jurisdiction.[14]  Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted, as is the case here, or where a more satisfactory showing of the facts is necessary.[15]

The Ninth Circuit has held that denying jurisdictional discovery where such discovery has the possibility of demonstrating a basis for jurisdiction is an abuse of discretion.[16]  Although there is no definitive Ninth Circuit authority specifically addressing the level of showing that a plaintiff must make to be entitled to jurisdictional discovery, some District Courts in this Circuit have required a plaintiff to

---

[14]  *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977).

[15]  *Butcher's Union Local No. 498, United Foods & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc.*, 557 F.2d at 1285 n.1).

[16]  *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements, Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003) (holding that it was an abuse of discretion for the trial court to deny plaintiff's motion for jurisdictional discovery without allowing plaintiff the opportunity to develop the record to make a *prima facie* showing of facts supporting jurisdiction).

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

establish, at most, a "colorable basis" for personal jurisdiction before discovery is ordered.[17]  This "colorable" showing is minimal; it has been described as something less than a *prima facie* showing, and could be equated as requiring the plaintiff to come forward with "some evidence" tending to establish personal jurisdiction over the defendant."[18]  One court within this Circuit has found that a plaintiff is not obligated to demonstrate a *prima facie* showing of personal jurisdiction before it can obtain jurisdictional discovery because it is counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that is required to defeat a motion to dismiss.[19]

As set forth below, Crystal has discovered evidence which is more than sufficient to make a "colorable" showing of Leroy-Somer's contacts with the State of California, assuming this Court were to determine that such a showing is required.

## C.   Crystal has made more than a "colorable" showing of contacts to warrant jurisdictional discovery.

The power of a federal court to exercise jurisdiction over a non-resident defendant turns on two factors: (1) whether a state long-arm statute confers personal jurisdiction; and (2) whether exercising jurisdiction comports with due process.[20] California's long-arm statute provides that California courts may exercise jurisdiction on any basis not inconsistent with the Constitution of the State of California or of the United States.[21]  The question is therefore whether the exercise of personal jurisdiction over Leroy-Somer is consistent with federal due process.

---

[17] *See, e.g., Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007); *eMag Solutions, LLC v. Toda Kogyo Corp.*, No. C 02-1611 PJH, 2006 U.S. Dist. LEXIS 94462 (N.D. Cal. 2006); *see also Chapman v. Krutonog*, 256 F.R.D. 645, 649 (D. Haw. 2009).

[18] *Mitan*, 497 F. Supp. 2d at 1119 (citing *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001)).

[19] *Orchid Biosciences, Inc. v. St. Louis Univ.,* 198 F.R.D. 670, 672-73 (S.D. Cal. 2001).

[20] *Data Disc, Inc.,* 557 F.2d at 1285.

[21] Cal. Code Civ. Proc. § 410.10 (2010).

7

The cornerstone of the due process inquiry is an analysis of a defendant's contacts with the selected forum.[22]   Jurisdiction is proper if a defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.[23]   In order to make this determination courts focus on the relationship between the defendant, the forum, and the litigation.[24]   Here, Crystal believes that Leroy-Somer's contacts with the forum are substantial enough such that they give rise to general jurisdiction.

### 1.   Contacts and Corporate Relationship.

Crystal has discovered the following information with respect to Leroy-Somer's contacts with the State of California, as well as information evidencing a corporate relationship between Leroy-Somer and Emerson that would support a finding of jurisdiction over Leroy-Somer:

1)   Emerson has not challenged the court's jurisdiction over it.

2)   Emerson and Leroy-Somer marketed themselves as a single corporate entity, thereby encouraging Crystal and NYK Line to rely upon the technological and financial resources and worldwide reputation of Emerson.[25]

3)   Emerson and Leroy-Somer list their combined sales revenue and combined number of worldwide employees.[26]

4)   Leroy-Somer is listed as a "main business" of Emerson for building drive systems.[27]

5)   During fiscal year 1999 Leroy-Somer generated $169 million in sales throughout North America.[28]

6)   Leroy-Somer operates two industrial sites in North America.[29]

---

[22]   *Tauzon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1169 (9th Cir. 2006).
[23]   *Id.*
[24]   *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed. 2d. 683 (1997).
[25]   See presentation entitled "Emerson: A Century of Manufacturing [and] Leroy-Somer: a Century of Experience," a true and correct copy of which is attached hereto as Exhibit "B," which was provided to NYK Line/Crystal through CAT.
[26]   *Id.* at p. 2.
[27]   *Id.* at p. 3.
[28]   *Id.* at p. 8.

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

7)   Although LS denies that it is in the business of designing, manufacturing, and marketing generators, MLS does not deny these allegations.[30]

8)   An entity known as "Leroy-Somer North America" or "Leroy-Somer-NA" has three sales representatives within the State of California:

> 1.  Harold Wells Associates, Inc.
>     3223 Crow Canyon Road, suite 300
>     San Ramon, CA  94583
>     Tel: 925-355-9900
>     Fax: 925-355-9901
>
> 2.  R. F. Partridge & Associates, Inc.
>     13875 Cerritos Corp. Drive #B
>     Cerritos, CA  90703
>     Tel: 562-802-7345
>     Fax: 562-802-3186
>
> 3.  Electric Power Support
>     4563 Lambeth Court
>     Carlesbad, CA  92008
>     Tel: 760-720-2051
>     Fax: 760-720-2502[31]

9)   Emerson acquired Leroy-Somer in 1992.[32]

10)  In April of 1999, Leroy-Somer-NA, a division of Emerson, was formed.[33]

11)  LS represents that as a member of the Emerson Group, "it has developed a long-term growth strategy, backed up by resources and synergies offered by a large international group."[34]

---

[29] *Id.* at p. 10.

[30] See affidavits of Mr. Xavier Guy Tranchant, CEO of MLS and LS, and forming part of the Record at DE 22 and 25.

[31] www.leroysomer-na.com/dreplist.html, a true and correct copy of which is attached hereto as Exhibit "C."

[32] www.leroy-somer-na.com/history.html, a true and correct copy of which is attached hereto as Exhibit "D."

[33] *Id.*

[34] www.leroy-somer.com/en/company/, a true and correct copy of which is attached hereto as Exhibit "E."

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

12) LS further represents that it has created an international network of 470 centers of expertise worldwide, with a 10,000-strong workforce operating through subsidiaries in the main industrialized countries, with industrial sites in Europe, North and South America, Mexico, India, and China.[35]

13) In a recent press release announcing that Emerson would sell its Motors and Appliance Controls business to Nidec Corporation, it represented that it would continue to operate its large motor-based business in Europe (Leroy-Somer).[36]

14) Emerson, LS, and Leroy-Somer-NA are all referenced in a trade publication discussing a major re-design of a line of generators.[37]

15) Leroy-Somer-NA has represented in court pleadings that it is a division of Emerson, and as such, it is not a separate entity.[38]

16) Leroy-Somer selected Shermco Industries as its authorized service provider for Leroy-Somer products in North America.[39]

17) Emerson's list of subsidiaries and affiliates, included in its Form 10-k filed with the Securities and Exchange Commission ("SEC") dated 11/23/10, lists nineteen companies with "Leroy-Somer" included in their name.[40]

18) Leroy-Somer describes itself as offering a complete range of special electric motors and alternators for cruise and merchant ships designed to respond to the most stringent specification in a specialized market.[41]

19) In 1999, Claude Henry was president of Leroy-Somer and also Group vice-president of Emerson Electric.[42]

20) LS motors are promoted as being sold in connection with drives manufactured by Emerson and its affiliate, Control Technologies at the California Drive

---

[35] *Id.*

[36] www.emerson.com/en-US/newsroom/news-releases/emerson-financial-news/Pages/Emerson-to-Sell-Motors-and-Controls-Businesses.aspx, a true and correct copy of which is attached hereto as Exhibit "F."

[37] "New Generators from Leroy-Somer division of Emerson Electric," *Diesel Progress North America,* May 1999, a true and correct copy of which is attached hereto as Exhibit "G."

[38] *See, e.g., Flatt v. Leroy-Somer, N.A.,* C.A. No. 09-01229 (USDC WD Tenn.), a true and correct copy of which is attached hereto as Exhibit "H."

[39] See press release of Shermco Industries dated May 12, 2008, and attached hereto as Exhibit "I."

[40] See list of subsidiaries and affiliates at p. 72, and attached hereto as Exhibit "J."

[41] See *Leroy-Somer News, 1919-1999,* a true and correct copy of which is attached hereto as Exhibit "K," p. 13.

[42] Exhibit "K," p. 3.

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Center in Long Beach, CA. Control Techniques represents that it has access to an "extensive" product range from its sister company – Leroy-Somer.[43] Leroy-Somer motors are combined with Control Techniques drives.

21) Leroy-Somer has a subsidiary in the United States called MLS Industries, Inc. MLS Industries, Inc., sold a company called Bearings Inc., headquartered in Corona California, to King Bearings, Inc. in 1990.[44]

22) A business named U.S. Electrical Motors-Leroy Somer Inc is located in Fremont, California.[45]

23) Leroy-Somer attends trade fairs in California such as the American Wind Energy Association (AWEA), WINDPOWER 2011 Conference & Exhibition in Anaheim, California.[46]

24) Leroy Somer exports products that pass through the Port of Los Angeles.[47]

25) A company, known as "Generator Joe" located in Santa Rosa, California advertises that it sells generators containing alternators manufactured by LS.[48]

26) A company, Central California Power, located in Shafter, California, represents that it assembles and sells generators containing LS generator ends.[49]

27) A company known as Hardy Diesel Specialists located in Jamal, California represents that it is a distributor of LS generator ends.[50]

28) A company known as Electric Motor Works located in Bakersfield, California distributes electric motors manufactured by LS.[51]

---

[43]  See Company Techniques Company Profile at p. 8, avail. at http://www.controltechniques.com/ CTcom/PDF/CT%20Company%20 Profile%200411%20lo.pdf, and attached as Exhibit "L."
[44]  Bearings Inc. Announces Completion of King Bearing Inc. Acquisition, PR Newswire, June 29, 1990, and attached hereto as Exhibit "M."
[45]  www.yellowbook.com/profile/electrical-motors-leroy-somer-inc_1844401217.html, a true and correct copy of which is attached hereto as Exh."N."
[46]  www.leroy-somer.com/en/news/trade_fairs.php?s=308, a true and correct copy of which is attached hereto as          Exhibit "O."
[47]  www.importgenius.com/importers/leroy-somer-co, a true and correct copy of which is attached hereto as Exh. "P."
[48]  See Generator Joe advertisement attached hereto as Exhibit "Q."
[49]  www.gensets.com  and  www.bizearch.com/company/Central_California_Power_156188.htm,  a true and correct copy of which is attached hereto as Exhibit "R."
[50]  www.hardydiesel.com/generator-ends, a true and correct copy of which is attached hereto as Exhibit "S."

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

29)    On October 7, 2010, it was announced that Quanta Services awarded Emerson, through its Industrial Automations Control Techniques business, a contract to supply power inverters and plant-wide controls for California's largest photovoltaic power generation facility.  It is unknown whether LS products have been used in connection with this contract.  However, Leroy-Somer represents that it has specialized in power conversion for over thirty-five years and has developed photovoltaic energy conversion solutions.  The facility will provide power to 36,000 homes.  We have seen in No. 20 above, that Leroy-Somer products are combined with Control Techniques products.[52]

### 2.    Reasonableness.

Leroy-Somer's arguments concerning fair play and substantial justice are premature prior to Crystal conducting the requested discovery because at this juncture defendants have not offered any explanation regarding the corporate structure of Leroy-Somer and/or Emerson.  Nonetheless, it is entirely reasonable to require Leroy-Somer to defend itself in California.

The Ninth Circuit evaluates the reasonableness of asserting general and specific jurisdiction according to the following factors: (1) the extent of purposeful interjection; (2) the burden on the defendant to defend the suit; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for resolution of the matter; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.[53]  The burden is on <u>defendants</u> to present a compelling case that the exercise of jurisdiction would in fact be unreasonable.[54]

---

[51]   http://www.electricmotorworks.com/inventory/?make=leroy-somer&horsepower=&rpm=&motor_enclosure=&List+Motors=%3CSPAN%3EList+Motors%3C%2FSPAN%3E, a true and correct copy of which is attached hereto as Exhibit "T."

[52]   http://www2.emersonprocess.com/en-US/news/pr/Pages/1010-Quanta.aspx and www.leroy-somer.com/en/markets/photovoltaic.html, a true and correct copy of which is attached hereto as Exhibit "U."

[53]   *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848 (9th Cir. 1993).

[54]   *Id.; Shute v. Carnival Cruise Lines,* 897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991).

---

12

A weighing of the above-listed factors, to the extent possible at this time, indicates it is entirely reasonable to require Leroy-Somer to defend itself in California. Crystal's principal place of business is located within the State of California. Given the amount of harm to California-based plaintiffs, California has a significant interest in this dispute. The evidence supporting Crystal's claim for damages, and possibly other elements of its case, is located at Crystal's principal place of business in California. Moreover, Emerson has not contested jurisdiction in this forum. If Crystal is not allowed to pursue its claims against Leroy-Somer, duplicative litigation arising out of the same set of underlying facts will likely ensue. It also appears that it is economically advantageous for Leroy-Somer to remain a party to this litigation given that all defendants are represented by the same counsel. As such, factors 4, 5, 6, and 7 favor Crystal's position herein.

Regarding factors 1 and 2, it is true that the generators were manufactured in France, and as such, certain witnesses may be located there. It should not be overlooked, however, that Leroy-Somer knew at all times it was being retained to construct products that would be installed on board a luxury cruise liner which, by its very nature, traverses the world. Discovery in this case will likely involve depositions of representatives of Crystal's parent company located in Japan, and the testimony of witnesses from around the globe. Leroy-Somer's assertion that the majority of the witnesses are in France is not accurate.

In addition thereto, Leroy-Somer and Emerson jointly market themselves as an electric and electronic components conglomerate with 111,800 employees worldwide.[55] They further represent that they operate 470 sales outlets and service centers worldwide.[56] As previously discussed, Crystal expects to develop through its requested discovery that Leroy-Somer component parts and products are incorporated into Emerson products. These "Emerson" products are sold throughout the United

---

[55] See Exhibit "B," supra.
[56] Id.

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

1  States and in California.  Considering the foregoing, and in light of the contacts
2  mentioned in the preceding section, it appears Leroy-Somer does in fact interject its
3  products into the California market and, given the global scope of its operations, it
4  does not present a substantial burden for it to defend itself in this forum.

5   An evaluation of the relevant factors at this preliminary stage of the litigation
6  indicates that it is entirely reasonable to require Leroy-Somer to defend itself in this
7  forum.

8

9  ***Conclusion***

10   Based upon the foregoing, Crystal respectfully requests that the Court deny
11  Leroy-Somer's Motion to Dismiss and to allow Crystal to proceed with discovery
12  pertaining to jurisdiction as well as the corporate relationship between Emerson and
13  the various Leroy-Somer entities.  Specifically, Crystal should be entitled to explore
14  these areas of inquiry with written discovery, and if necessary, by taking a corporate or
15  other depositions of each defendant. Crystal submits that the requested discovery is
16  entirely reasonable given the above information and necessary in order for plaintiff to
17  file a more substantive opposition to the motions to dismiss.  The requested discovery
18  should also be justified given the apparent complexity of the business activities of
19  defendants.

20

21  DATED:   May 16, 2011

22

23       Respectfully Submitted,

24       FOWLER RODRIGUEZ VALDES-FAULI

25

26       By:   */s/ Norman C. Sullivan, Jr.*
27        Norman C. Sullivan, Jr. (State Bar No. 48762)
28        George J. Fowler, III (admitted *pro hac vice*)

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

1

2                        NIXON PEABODY LLP

3

4                 By:  _____/s/ Kelly L. Kress_____

5                       William L. Robinson (State Bar No. 087647)
                        Kelly L. Kress (State Bar No. 246368)
6                       Attorneys for Plaintiffs
                        CRYSTAL CRUISES, INC. and
7                       CRYSTAL SHIP THREE (BAHAMAS)
                        LIMITED
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *CERTIFICATE OF SERVICE*

I hereby certify that I have on this 16th day of May, 2011, served a copy of the foregoing pleading on counsel for all parties to this proceeding via electronic filing with the District Court, by fax, e-mail or by mailing the same by United States Mail, properly addressed, with first-class postage prepaid.

_____ */s/ Kelly L. Kress*_____

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**